

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

ENTERED
08/31/2018

| | |
|---|---|
| IN RE: § | |
| JUAN ALBERTO GUEVARA; dba FRS § | CASE NO: 16-31741 |
| ROOFING & FOUNDATION § | |
|    Debtor(s) § | |
| § | CHAPTER 13 |

### MEMORANDUM OPINION

Juan Guevara filed for chapter 13 bankruptcy on April 4, 2016. One day later, Mohammad Aqil purchased property at a tax foreclosure sale. Guevara claims an interest in the foreclosed property. The Court dismissed Guevara's bankruptcy case on May 23, 2016. Aqil moved to reopen the case in an effort to clear his title to the property. The Court granted Aqil's motion to reopen. Aqil now moves for relief from the automatic stay, requesting that the Court retroactively validate his purchase of the property.

Aqil's motion for retroactive relief from stay is granted.

### Background

Juan Guevara claims ownership of the property located at 609 and 605 Korff Dr., Houston, Texas 77037 (the "Property"). (*See* Case No. 16-31741, ECF 29-1 at 2). Guevara's claim to the Property is based upon a Warranty Deed, which was recorded on May 15, 2013, in the Real Property Records of Harris County, Texas under File No. 20130233276. (*See* ECF No. 29-1 at 2). Guevara filed this chapter 13 bankruptcy case—his fourth such case filed in the span of two years—on April 4, 2016.[1] (*See* ECF No. 1). All of Guevera's cases were dismissed for failure to comply with the filing requirements laid out in 11 U.S.C. § 521(a)(1). (*See* ECF No. 33).

---

[1] Guevara's previous bankruptcy cases were filed on July 31, 2014 (Case No. 14-34179), August 3, 2015 (Case No. 15-34131), April 4, 2016 (Case No. 16-31741), and December 6, 2016 (Case No. 16-36259).

On April 5, 2016, one day after Guevara filed for bankruptcy, Mohammad Aqil purchased the Property at a tax foreclosure sale. (ECF No. 33-1 at 1). Aqil paid $34,658.77 in outstanding property taxes on the day of the sale, and later paid an additional $21,871.54 in property taxes as record owner of the property. (ECF No. 29-1 at 2). Aqil insists that he was unaware of the bankruptcy filing at the time of the tax sale. (ECF No. 40 at 3). In fact, Aqil claims that he was not made aware of the bankruptcy filing until September 2016 when he encountered Guevara at the Property. (June 1, 2018 Hearing at 9:33 a.m.). Aqil's Deed to the Property was recorded in the Real Property Records of Harris County, Texas, on December 20, 2016, under File No. RP-2016-569481. (ECF No. 22-1 at 1). The Deed lists Sedric Willis as the prior owner of the Property and made no mention of Guevara's interest in the chain of title. (*See* ECF No. 22-1 at 1). The Court dismissed Guevara's bankruptcy case on May 23, 2016, for failure to comply with the filing requirements laid out in 11 U.S.C. 521(a)(1), similar to the reasons for dismissal of his three previous chapter 13 bankruptcy cases. (*See* ECF No. 17).

On January 30, 2018, Aqil filed suit against Guevara in the 234th Judicial District Court of Harris County, Texas seeking to clear his title to the Property. (*See* ECF No. 29-1 at 3). In his original petition, Aqil alleged that the "Warranty Deed" through which Guevara claimed an interest in the Property was merely a contract to purchase the Property rather than an actual interest in the Property as Guevara purports. (ECF No. 29-1 at 2). Because Guevara failed to pay any consideration or property taxes as required by the contract, Aqil argued that Guevara had no rights to the Property under the contract titled "Warranty Deed." (ECF No. 29-1 at 2). The state court subsequently dismissed that case for lack of jurisdiction. (*See* Case No. 2018-06406).

Aqil filed a motion for relief from stay on December 11, 2017, seeking to clear title to the Property. (*See* ECF No. 22). At the January 19, 2018 hearing on the motion for relief from stay,

the Court raised the jurisdictional issue of whether it could hear the motion in light of the June 30, 2016 dismissal of the case. (January 19, 2018 Hearing at 9:07 a.m.). In response, Aqil filed a motion to reopen the case on February 5, 2018. (*See* ECF No. 28). On March 28, 2018, the Court granted the motion to reopen the case. (*See* ECF No. 34). Concurrent with this ruling, the Court expressed concern about lifting the automatic stay with respect to the tax sale in light of the fact that actions taken in violation of the stay are treated as void under Texas law. (March 28, 2018 Hearing at 9:09 a.m.). On May 7, 2018, Aqil filed a memorandum in support of his motion for relief from stay. (*See* ECF No. 40).

## Jurisdiction

The district court has original jurisdiction over this proceeding under 28 U.S.C. § 1334(a). This is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (G), and (O).

## Analysis

I. *Effect of a Tax Sale Conducted in Violation of the Automatic Stay*

Guevara filed for bankruptcy on April 4, 2016, invoking the automatic stay pursuant to 11 U.S.C. § 362(a). Although Mohammad Aqil claims that he was unaware of the bankruptcy filing at the time of the tax sale, he concedes that his purchase of the Property is void because it violated the automatic stay and is without legal effect under Texas law. (ECF No. 40 at 2).

Upon a debtor's filing of a bankruptcy petition, the automatic stay operates to prevent further proceedings against the debtor. 11 U.S.C. § 362(a). The stay prohibits "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate." 11 U.S.C. § 362(a)(3). The stay is effective immediately upon the filing of the petition regardless of whether the parties have notice of its existence. *Williams v.*

*Countrywide Home Loans, Inc.*, 504 F. Supp. 2d 176, 194 (S.D. Tex. 2007) (quoting *Huddleston v. Texas Commerce Bank–Dallas*, 756 S.W.2d 343, 345 (Tex. App.—Dallas 1988, writ denied)). Courts remain split on whether to treat acts taken in violation of the automatic stay as void or voidable. *See Sikes v. Glob. Marine, Inc.*, 881 F.2d 176, 178 (5th Cir. 1989) (stating that "Courts considering whether actions taken in violation of the automatic stay are void or voidable have reached opposite conclusions."). In Texas, however, courts generally agree that treating an action taken in violation of the stay as void is most consistent with the fundamental purpose of the automatic stay, which is to offer broad protections to the debtor. *See York v. State*, 373 S.W.3d 32, 39 (Tex. 2012); *Williams*, 504 F. Supp. 2d at 194. While an action taken in violation of the automatic stay is invalid in Texas, it may still be valid if the creditor obtains retroactive relief from the stay. *See York*, 373 S.W.3d at 40. Until a court modifies the stay according to 11 U.S.C. § 362(d), however, the action remains void and without legal effect. *Id.*

The tax sale at issue took place on April 5, 2016, one day *after* the automatic stay arose due to Guevara's bankruptcy filing on April 4, 2016. Consequently, Aqil's purchase of the Property, although apparently made in good faith, violated the § 362(a) stay, which prevents "any act to obtain possession of property . . . or to exercise control over property of the estate . . . ." 11 U.S.C. § 362(a)(3). Foreclosure proceedings in violation of § 362(a), such as this tax sale, have no legal effect unless a bankruptcy court grants retroactive relief from the stay. *See Cont'l Casing Corp. v. Samedan Oil Corp.*, 751 S.W.2d 499 (Tex. 1988) (per curiam). Accordingly, Aqil's purchase of the Property at the April 5, 2016 tax sale is void unless his motion for relief from stay is granted.

*II. Authority to Annul the Automatic Stay With Respect to the Tax Sale*

While Aqil admits that his purchase of the Property is invalid, he argues that the Court nevertheless possesses the authority to annul the stay with respect to the tax sale. Although actions taken in violation of § 362(a) are considered void in Texas, Aqil argues that his actions may ultimately be validated through retroactive annulment. (ECF No. 40 at 2-3).

Section 362(d) provides that the bankruptcy court may grant relief from the stay "by terminating, annulling, modifying, or conditioning" the stay. 11 U.S.C. § 352(d). Prior to the promulgation of the Bankruptcy Code, the Supreme Court held that a post-petition foreclosure in violation of the automatic stay was "void" and "beyond its power." *Kalb v. Feuerstein*, 308 U.S. 433, 438 (1940). The Fifth Circuit has since departed from this precedent, holding that an action in violation of the stay is *voidable*, rather than void. *See Sikes v. Glob. Marine, Inc.*, 881 F.2d 176, (5th Cir. 1989). Under the Bankruptcy Code, the Fifth Circuit explained that bankruptcy judges now have the power to retroactively annul the stay, a power that they did not have at the time of the *Kalb* decision. *Id.* at 179. Annulment of the stay results in the validation of actions in violation of the stay, regardless of whether that action is classified as void or voidable. *Id.* at 178–179. According to the Fifth Circuit, violations that can be retroactively validated by annulment are precluded from being considered truly "void," as the term was used by the *Kalb* Court. *Id.*

Texas courts disagree with the Fifth Circuit on this point and continue to classify actions in violation of the stay as "void." *See York*, 373 S.W.3d at 40. However, the distinction between the two classifications is "much less precise and clear in practical usage." *Sikes*, 881 F.2d at 207. The designations "'void' and 'voidable' deal with a transaction or occurrence that was invalid or had no legal effect when it occurred, but might be made valid by a subsequent judicial act or

ratification." *In re Pierce*, 272 B.R. 198, 207 (Bankr. S.D. Tex. 2001). Consequently, while Texas courts consider actions in violation of the stay "void," they agree with the result in *Sikes* that by nullifying the stay, the bankruptcy court validates the otherwise invalid action. *York*, 373 S.W.3d at 40.

Here, Aqil's purchase of the Property at the tax sale violated the automatic stay and was void when it occurred. However, annulment of the stay "retroactively vitiat[es] its prohibition," meaning that Aqil's purchase of the Property would no longer be considered a violation of the stay. *See York*, 373 S.W.3d at 39. Under the Bankruptcy Code, the Court is authorized to annul the automatic stay. 11 U.S.C. § 362(d). This Court thus has the authority to retroactively annul the automatic stay; and in turn, validate Aqil's purchase of the Property.

III. *Equitable Considerations of Annulling the Automatic Stay*

The relief Aqil seeks in retroactively annulling the automatic stay is considered extraordinary relief, which is granted only under compelling circumstances. *Thornburg v. Lynch (In re Thornburg)*, 277 B.R. 719, 731 (E.D. Tex. 2002). The governing question is "whether if relief from the stay had been sought before the action in violation of the stay was taken, the relief would have been granted." *In re Fennell*, No. 17-20095, 2017 WL 7050633, at *2 (N.D. Tex. November 13, 2017). Courts examine seven factors when determining whether retroactive annulment of the automatic stay is appropriate:

    i.   if the creditor had actual or constructive knowledge of the bankruptcy filing;
    ii.  if the debtor has acted in bad faith;
    iii. if there was equity in the property of the estate;
    iv. if the property was necessary for an effective reorganization;
    v.  if grounds for relief from the stay existed and a motion, if filed, would have been granted prior to the violation;
    vi. if failure to grant retroactive relief would cause unnecessary expense to the creditor; and
    vii. if the creditor has detrimentally changed its position on the basis of the action taken.

*In re Thornburg*, 277 B.R. at 731, n. 18; *In re Fennell*, 2017 WL 7050633 at *3.

In this case, Aqil purchased his property from a tax foreclosure sale one day after Guevara filed his bankruptcy petition. (ECF No. 33-1 at 1). The Deed to the property stated that Sedric Willis was the prior owner and failed to reflect any interest on Guevara's part in the property. (ECF No. 22-1 at 1). Additionally, Guevara failed to file his bankruptcy schedules and other required documentation, resulting in the dismissal of his bankruptcy case on May 23, 2016. (*See* ECF No. 17). These facts demonstrate that Aqil never received notice regarding Guevara's bankruptcy filing, of Guevara's claimed interest in the property, or that the purchase of the property violated the automatic stay. Aqil also spent approximately $56,529.31 in total to cure delinquent taxes and maintain required tax payments on the property, expenses which detrimentally changed his position. (ECF No. 29-1 at 2). Aqil's lack of notice regarding Guevara's bankruptcy and payment of taxes consistent with the duties of a property owner both weigh in favor of retroactive annulment of the automatic stay.

Guevara's actions also dictate whether the requested retroactive relief is appropriate. Guevara filed four bankruptcies in the span of two years; however, each case was dismissed because Guevara failed to file the documentation required under the Bankruptcy Code. (*See supra* n. 1). The Court similarly dismissed the current case after Guevara failed to comply with the Court's Order to cure deficiencies. (ECF No. 17 at 1). Guevara's purported interest in the property derived from a contract to purchase, which he allegedly failed to provide any consideration for, calling into question whether Guevara ever possessed an interest in the property. (ECF No. 29-1 at 2). It is undisputed that the property was delinquent in property taxes, which Guevara had a duty to pay as the property owner. Accordingly, these factors also weigh in favor of granting Aqil's requested retroactive relief from the automatic stay.

The final factor considers whether the Court would have granted relief from the stay, had Aqil filed a timely motion. *In re Thornburg*, 277 B.R. at 731, n. 18; *In re Fennell*, 2017 WL 7050633 at *3. Courts may grant relief from the automatic stay pursuant to 11 U.S.C. § 362(d)(2) if the debtor lacks equity in the property and such property is not necessary for an effective reorganization. However, to obtain this relief, "a party in interest" must file a motion to obtain relief from the automatic stay. § 362(d). Aqil's act of purchasing the property occurred *after* the petition was filed. He then relied on his purchase to expend significant sums. Because these events occurred *after* the petition, Aqil would not have had standing to seek to lift the stay in advance of the sale. Accordingly, this factor is inapplicable to determining the equities of Aqil's requested relief.

After examining the equitable considerations described in *Thornburg* and *Fennel*, both Guevara's and Aqil's actions in this bankruptcy case weigh in favor of granting Aqil's request for retroactive relief from the automatic stay.

## Conclusion

The Court will enter an Order consistent with this Memorandum Opinion.

SIGNED **August 31, 2018.**

Marvin Isgur
UNITED STATES BANKRUPTCY JUDGE